Davis, J.,
delivered the opinion of the court:
These claims, called the “ Loudoun County Claims,” are referred to this court in accordance with the provisions of the act of March 3, 1883, called the “Bowman Act,” and it is objected that the court is without jurisdiction to find and report the facts therein.
November 27, 1864, Major-G-eneral Sheridan issued the following order:
“Headquarters Middle Military Division,
“November 27, 1864.
“ G-eneral : You are hereby directed to proceed, to-morrow morning at 7 o’clock, with two brigades of your division now in camp, to the east side of the Blue Ridge, via Ashby’s (lap, *434 iind operate against the guerrillas in the district of country bounded on the south by the line of the Manassas Gap Bail-road as far east as White Plains: on the east by the Bull Bun range : on the west by the Shenaudoah Biver; and on the north by the Potomac.
“ This section has been the hot-bed of lawless bands, who have from time to time depredated upon small parties on the line of the Army communications, on safeguards left at houses, and on small parties of our troops. Their real object is plunder and highway robbery.
“ To clear the country of these parties, that are bringing destruction upon the innocent as well as their guilty supporters by their cowardly acts, you will consume and'destroy all forage and subsistence, burn all barns and mills and their contents, and drive off all stock in the region the boundaries of which are above described. This order must be literally executed, bearing in mind, however, that no dwellings are to be burned and that no personal violence be offered the citizens.
“ The ultimate results of the guerrilla system of warfare is the total destruction of all private rights in the country occupied by such parties. The destruction may as well commence at once, and the responsibility of it. must rest upon the authorities at Bichmond, who have acknowledged the legitimacy of guerrilla bands,.
“The injury done to this army by them is very slight, the injury they have indirectly inflicted upon the people and upon the rebel army may be counted by millions.
“The reserve brigade of your division will move to Suickers-ville on the 20th. Snickersville should be your point of concentration and the point from which you should operate in destroying toward the Potomac.
“Four days7 subsistence will be taken by your command. Forage can be gathered from the country through which you pass.
“You will return to your present camp, via Snickersville, on the fifth day.
“ By command of Major-General Sheridan.
“Jaimes W. Forsyth,

“Lieutenant Colonel and Chief of Staff.

“ Brevet Major-General Merritt,

“Commanding First Cavalry Division

It will be noticed that the primary purpose of this order was not the supply of the Army, but injury to the enemy. General Sheridan said: “The ultimate results of the guerrrilla system of warfare is 'the total destruction of all private rights in the country occupied by such parties. This destruction may as well commence at once, and the responsibility of it must rest upon the authorities at Bichmond.77 The raiding troops were *435 not to live upon the Country; they were allowed to u consume” as well as to destroy “ all forage and subsistence;” but, as the troops were to take with ;'hern rations for the full period of their contemplated absence upon this duty, and as “ forage.” (and “ forage” only) was specifically allowed to be gathered from the country, it is clear that it was intended that the troops should live, not upon what they found, but upon what they carried.
Forage and subsistence which the troops could not transport were to be destroyed, as were barns and mills, with their ■contents, while live stock was to be driven off. This order was executed, and the live stock taken from individuals in the designated district were intermingled and driven within the lines, where some were afterwards slaughtered and used for, food, while others were sold and the proceeds were turned into the Treasury This course made it impracticable for any claimant to ascertain whether his stock or any part of it had been either consumed by the Army or sold for the benefit of the Government.
After the organization of the commission, called the Southern Claims Commission, many of the residents of Loudoun County presented their claims for losses of this nature to that tribunal, which dismissed them under the following ruling:
“ We have not considered the ‘ Loudoun County Claims,’ so called. They are numerous ; are chiefly for 'property taken by military necessity under the order of General Sheridan of [November 27,1864. The claims for property taken for the use of the Army are so intermingled with those in which the property was sold and the proceeds put into the Treasury that it is almost impossible to separate them. As largo herds of horses, cattle, and sheep were driven off together, the claimants can not trace their property to Army use. We have therefore declined examining them, thinking Congress may make some special provision in regard to their examination and settlement.” (First General Eeport of tlie Commissioners of Claims, II. E. Mis. Doc. No. 16, Forty-second Congress, second session, p; 8.)
The cases of some of the claimants herein were not presented to said Commissioners of Claims, perhaps because of said ruling.
Tn March, 1872, the Committee on Claims reported to the Senate, recommending the passage of an act for the relief of sufferers of this class (Forty-second Congress, second session, *436 Senate lleport No. 80), and January 23, 1873, an act was approved providing for the compensation of many of the sufferers, but in the long list in the act the names of the claimants in the case at bar do not appear, and eleven years afterward tlieir claims were referred here for proceedings in accordance with the “ Bowman Act.” These claims are all exclusively for live stock: driven off, and it is impossible to discover in any one instance whether the stock was later consumed by the Army or sold for the Government’s benefit.
If all the stock were sold and the proceeds turned into the Treasury, then claimants were given a remedy by the “ captured and abandoned property act,” and having neglected to-X>ursue it they are now barred by the limitation of that act, therefore barred by tbe provisions of a law of the United States, and the claims are excluded from our jurisdiction-by the second paragraph of section 3 of the Bowman act. (Vance v. The United States, 21 C. Cls. R., 488; Payne v. The United States, 22 id., 144; Nelson v. The United States, ib., 159.)
If all the stock were taken under such circumstances that the seizure might be construed as a proper taking and appropriation of supplies for the use of the Army, then the remedy was to be found in the Southern Claims Commission, and as-some of the claimants have not availed themselves of this remedy, their claims are also, by virtue of the same provisions, excluded from our jurisdiction. (Dodd v. The United States, 21 C. Cls. R., 117; Dyer v. The United States, 23 id., 418; Burwell v. The United States, 22 id., 92.) The fact that it is impossible to separate the stock sold from the stock eaten can not aid claimants, for jurisdiction of claims for loss in either event is-excluded by the Bowman act.
¡Some of the claimants did present their claims to the Southern Claims Commission, and as to them the Commission said:
“ The claims for property taken for the use of the Army are so intermingled with those in which the property was sold and the proceeds put into the Treasury that it is almost impossible to separate them.”
The proof in the cases here stops at the taking: That taking was not primarily intended for Army supply, but for the injury and weakening of the enemy; the raid was not made to-obtain food, but for destruction, and the presumption, therefore, is not the same as in cases where under orders the Army *437 subsisted upon the country. The object was not to feed the soldiers, but to starve the guerrillas, and was similar in nature and spirit to the destruction of barns, mills, and their contents which was directed in the same order.
Claims for destruction or damage to property during the late war are excluded from our jurisdiction (Heflebower v. The United States, 21 C. Cls. R., 231; Myers, Admr. v. The United States, 22 id., 80; Madison Female Institute v. The United States, 23 id., 188), and it becomes incumbent upon claimants to show whether their stock was killed and wasted on the march when driven before troops supplied with rations, or whether they died by the way, or were afterwards, by proper direction applied to Army use, or whether they were sold and the proceeds of the sale turned into the Treasury. This has not been done; from the nature of the occurrence it can not be done.
The petition is dismissed for want of jurisdiction.